IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**KENNETH MOBLEY**  **PLAINTIFF**
Reg. #32493-509

V.   NO. 2:24-cv-00029-LPR-ERE

**CHAD GARRETT,** *et al.*  **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedure for Filing Objections

This Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within 14 days of the date of this Recommendation. If you do not file objections, Judge Rudofsky can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### II.   Background

On February 15, 2024, *pro se* plaintiff Kenneth Mobley, then confined at the Forrest City Medium–Federal Correctional Institution ("FCM-FC"), filed this civil rights lawsuit against FCI-FC officers asserting violations of the Constitution and the Prison Rape Elimination Act ("PREA"). Mr. Mobley currently proceeds on claims

against Defendants Warden Garrett, Unit Manager Walton, Captain Bledsoe, Lieutenant Marrs, Officer Wolverton, Officer Garner, and unidentified Doe Defendants. He alleges that: (1) he is transgender and was forced to strip naked in front of other inmates; Defendants Garrett, Edge, Morris, and Bledsoe failed to properly investigate an incident in which he was allegedly sexually assaulted by another inmate and his claim regarding an improper strip search; (3) Defendants Garrett, Edge, Marrs, and Bledsoe violated his due process rights by failing to follow BOP policies for investigating and reporting any PREA violation; and (4) Defendants Garrett, Edge, Bledsoe, and Walton retaliated against him by preventing him from "press[ing] charges or fil[ing] P[REA]." *Doc. 26 at 6*.

On January 15, 2025, I issued a Recommendation that Defendants' motion for summary judgment on the issue of exhaustion, filed December 11, 2024,be granted. *Docs. 69, 70, 71, 73*. While the Recommendation was pending, Mr. Mobley filed motions in which he advised that he had never received a copy of the summary judgment motion (*Docs. 75, 76, 77*), and Judge Rudofsky referred the case back to me. *Doc. 78*. I then reopened the summary judgment record, directed the Clerk to mail Mr. Mobley a copy of Defendants' motion for summary judgment and supporting materials, and provided Mr. Mobley additional time to respond to the summary judgment motion. *Doc. 79*.Subsequenlty, Mr. Mobley filed two motions for preliminary injunctive relief. *Docs. 81, 85*. In the first, he complained that prison

2

staff had failed to provide him mail from the Court that included Defendants' motion for summary judgment. *Doc. 81*. I then: (1) withdrew my previous Recommendation; (2) instructed the Clerk to provide Mr. Mobley copies of Defendants' summary judgment papers; and (3) provided Mr. Mobley additional time to respond to Defendants' motion for summary judgment. *Doc. 83*.

On August 26, 2025, Judge Rudofsky adopted my Recommendation to deny Mr. Mobley's request for injunctive relief. *Doc. 97*. Now, having reviewed Mr. Mobley's responses in opposition to summary judgment (*Docs. 80, 84, 92, 93, 94*) and Defendants' reply in support (*Doc. 87*), I again recommend that Defendants' motion for summary judgment (*Doc. 69*) be granted.[1]

## III. Discussion

### A. The PLRA Makes Exhaustion Mandatory

The Prison Litigation Reform Act ("PLRA") requires prisoners complaining about prison conditions to exhaust available grievance procedures before filing a civil lawsuit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

---

[1] Given Mr. Mobley's first motion for injunction relief and allegations that prison officials had confiscated his mail, it was possible that the Court would instruct Defendants to provide additional copies to Mr. Mobley or grant him more time to respond to Defendants' motion for summary judgment. Accordingly, I waited until Judge Rudofsky denied Mr. Mobley's motions for injunctive relief before issuing this Recommendation.

available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available administrative remedies before filing suit, and "[i]f exhaustion was not completed at the time of filing, dismissal is mandatory").

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Thus, the PLRA required Mr. Mobley to satisfy the BOP's requirements for raising and exhausting his pending claims before bringing this action.[2]

### B. The BOP's Grievance Procedure

The BOP has a four-level administrative process for resolving inmate grievances: (1) an attempt at informal resolution with prison staff; (2) if the attempt at the informal resolution fails, submission of a formal grievance to the Warden on form BP-9; (3) if the formal grievance is denied, appeal to the appropriate Regional Director on form BP-10; and (4) if the BP-10 appeal is denied, appeal to the General Counsel within 30 days of the Regional Director's response on form BP-11. 28 C.F.R. §§ 542.13–542.18. A grievance is not deemed exhausted unless it has been

---

[2] There are exceptions to the exhaustion requirement, but they are few and narrow in scope. For example, an inmate's subjective belief about the futility of the exhaustion process or his misunderstanding about the process are irrelevant in determining whether administrative procedures are available. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

4

properly presented at all four levels of the administrative remedy process and the inmate's requests were denied at each level. Bureau of Prisons Program Statement (P.S.) 1330.18(9).

PREA eliminates the informal resolution requirement, or any requirement that an inmate resolve with staff, a grievance regarding an allegation of sexual abuse. 28 C.F.R. § 115.52(b)(1). In cases where institutional staff members are named, grievances are appropriately filed first at the regional level. P.S. 1330.18(d)(1).

### C.   Mr. Mobley's Grievance History

Defendants submit the affidavit of Joshua Sutton, Executive Assistant and Administrative Remedy Coordinator at the Federal Correctional Complex in Forrest City, Arkansas. *Doc. 71-1*. Mr. Sutton testifies that, since being incarcerated, Mr. Mobley has submitted fifteen Administrative Remedy Requests or Appeals, including five grievances complaining that BOP staff violated PREA by: (1) allowing another inmate to sexually assault Mr. Mobley; (2) conducting an inappropriate visual search based on Mr. Mobley's incorrect gender identity; (3) conducting a visual search during which staff made inappropriate comments; and (4) alleging harassment and assault by an unidentified officer. *Id. at 4*.

However, Mr. Mobley failed to complete the exhaustion process as to any of these grievances, none of which were appealed to General Counsel, the final step of the administrative process. *Doc. 71-1 at 2,4*.

In his response to Defendants' motion, Mr. Mobley argues that Defendant Walton failed to provide him grievance forms (informal BP 8 or formal BP 9) at the institutional level. *Doc. 84 at 2*. In addition, he complains that other Defendants continued to "thwart" him from filing grievances. *Id. at 2, 4, 5*. However, as Defendants correctly note, Mr. Mobley's argument is misplaced because the record shows that Mr. Mobley did, in fact, submit grievances at the institutional level pertaining to the claims raised in this case. *Doc. 71-1 at 4*. However, Mr. Mobley failed to complete the exhaustion process by appealing the grievance decisions to the final step of the administration process. *Id*.

Mr. Mobley also argues that the BOP inmate grievance procedure does not require an inmate to file an informal grievance *or* appeal any such decision to the Warden. *Doc. 92 at 1*.

The BOP grievance procedure specifically incorporates 28 C.F.R. § 115 in addressing PREA grievances. See https://www.bop.gov/policy/progstat/1330_018. 28 C.F.R. § 115.52 modifies the standard exhaustion requirements under the PLRA. *Smallwood v. Williams*, 59 F.4th 306, 319-20, 319 n.7 (7th Cir. 2023). First, as mentioned above, an inmate is not required to pursue any informal grievance process to resolve an alleged incident of sexual abuse, "or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse." 28 C.F.R. § 115.52 (b)(3). Second, an inmate is not required to file a PREA grievance within twenty days of the alleged

6

incident. Rather, an inmate may file a grievance regarding a PREA complaint at any time after the alleged incident. 28 C.F.R. § 115.52 (b)(1). Third, "[i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director." 28 C.F.R. § 542.14 (d)(1). To do so, the inmate must mark "Sensitive" on the Request and provide a written explanation why he or she chose not to submit the Request at the institution. "If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden." *Id*.

In his "affidavit of truth," Mr. Mobley explains that BOP officials improperly rejected his grievances rendering the administrative remedy process unavailable to him. *Doc. 93 at 1*. Mr. Mobley attaches a copy of a rejected grievance appeal to his affidavit. *Id. at 3*.

Mr. Mobley's grievance papers indicate that he attempted to submit his request directly to the Regional Coordinator pursuant to the code section referenced above. However, the Regional Coordinator determined that Mr. Mobley's issue was "not sensitive" and should have been filed at the institutional level. *Id. at 3-4*. Mr.

Mobley could have restarted the process by submitting a formal grievance to the Warden, at Step Two, but he elected not to do so.

While inmates raising PREA-related claims have considerably more flexibility in exhausting their administrative remedies, the PLRA still requires inmates to fully exhaust a PREA-related grievance before filing a federal lawsuit.

Mr. Mobley has failed to come forward with any evidence contradicting Mr. Sutton's testimony. Nor has he presented any evidence that he was either precluded from fully exhausting his administrative remedies or that the grievance procedure was unavailable to him. Mr. Mobley's unsubstantiated, conclusory allegations are insufficient to defeat Defendants' properly supported motion. *Haas v. Kelly Services*, 409 F.3d 1030, 1034 (8th Cir. 2005).

Therefore, based on the record before the Court, there is no genuine issue of material fact on the threshold question of whether Mr. Mobley fully exhausted his pending claims against Defendants before bringing this lawsuit, and Mr. Mobley's claims should be dismissed, without prejudice, based on his failure to fully exhaust his administrative remedies.

IV.   **Conclusion:**

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 69*) be GRANTED.

2. Mr. Mobley's claims be dismissed, without prejudice, for failure to exhaust administrative remedies.

3. The Clerk be instructed to close this case.

DATED 28 August 2025.

_____
UNITED STATES MAGISTRATE JUDGE